```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
               Plaintiff,       )
                                )
     v.                         )    No. 09 C 5149
                                )       (08 CR 543)
MARCUS TYMS,                    )
                                )
               Defendant.       )
```

## MEMORANDUM OPINION AND ORDER

Marcus Tyms ("Tyms"), has filed a self-prepared 28 U.S.C. §2255 ("Section 2255") motion ("Motion"), seeking to get out from under (1) his guilty plea to an extraordinarily disturbing sex offense and (2) the consequent 280-month sentence that this Court then imposed. This Court has engaged in the careful examination mandated by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), and Tyms' motion is rejected out of hand without the need for any government response or for an evidentiary hearing.

Not only the recency of the case (Tyms was sentenced on July 2, 2009, less than two months ago) but the appalling nature of Tyms' offense, coupled with his post-guilty-plea conduct, have understandably left the case more than fresh in this Court's recollection. Accordingly it is possible to deal swiftly with Tyms' two stated grounds for relief:

> 1. In Motion ¶14.A, Tyms' "Ground one" asserts:
>
> My first attorney, J. Clifford Greene, Jr. was ineffective as counsel causing me to plead guilty.

2. In Motion ¶14.B, Tyms' "Ground two" asserts:

> The Government did not prove/provide evidence to show applicable jurisdiction.

As for the first of those grounds, Tyms' change to a guilty plea was indeed a last-minute event. Trial was set to begin on Monday, December 8, 2008, but Tyms announced at the Friday morning December 5 voir dire conference (which had been set to discuss various aspects of trial procedure) that he would accept the government's latest (and last) offer for a plea. Later that day this Court, presented with a comprehensive plea agreement signed by Tyms as well as by his counsel and government counsel, carried out its customary meticulous exploration of the matter to assure (1) that Tyms' plea was indeed voluntary, (2) that he understood the effect of the plea (what he had to give up as well as what he might consider to be the advantages of a change of plea) and (3) that he was proposing to plead guilty because he acknowledged the conduct that was necessary to sustain a conviction.

In that regard this Court is always careful to inquire into the aspect of voluntariness that involves the role of a defendant's attorney. After having made a series of inquiries that enabled this Court to find that Tyms was competent to plead guilty if he so elected, this Court engaged in the following colloquy with Tyms at Tr. 7:18 through Tr. 8:5 of the 29-page

plea transcript:

> THE COURT: Have you gotten a copy of this indictment, and have you fully discussed the charges in your case in general with Mr. Greene as your lawyer?
>
> DEFENDANT TYMS: Yes, sir.
>
> THE COURT: Are you fully satisfied with the representation, the counseling, the advice that you are getting from him?
>
> DEFENDANT TYMS: Yes, sir.
>
> THE COURT: You told me that you signed a plea agreement. Did you have the full opportunity to read and to discuss with Mr. Greene what the content was of the plea agreement before you signed it?
>
> DEFENDANT TYMS: Yes sir.

In terms of the offense itself the government had Tyms dead to rights, based on the appallingly graphic nature of Tyms' own extensive chat exchanges with the 13-year-old virgin "Amber" and on the fact that Tyms, knowing her age, actually had her come to this District from her home elsewhere and had sex with her. Less than two years earlier Tyms (then 21 years old) had pleaded guilty to a state charge of having solicited, via the internet, a person that he believed to be a 13-year-old girl named "Ashley" to meet with him in order to engage in oral sex, anal sex and vaginal intercourse.[1]

That earlier conviction compelled the imposition of a 10-year sentence that would run consecutively to whatever sentence

---

[1] Unknown to Tyms, "Ashley" was actually an undercover Cook County, Illinois Sheriff's Police Officer.

would be imposed on the current offense. And of course the advantage that accrued to Tyms from a guilty plea, rather than his going to trial and facing a dead certain conviction, was the two-level Sentencing Guideline credit for acceptance of responsibility that would be lost if the trial went ahead--a difference in offense levels that would reduce the advisory Sentencing Guideline range for the current offense by about 25%.

Despite the benefit thus afforded to Tyms through the efforts of his then counsel Greene, Tyms soon had second, third and fourth thoughts. First he had Greene file on his behalf a motion to withdraw the plea because he had assertedly been cut off from his parents during the time that he had to reach a decision. This Court found that reason inadequate and denied the motion.

Then Tyms switched counsel to a member of the Federal Defender Panel who filed on his behalf another motion to withdraw the guilty plea, this time on the asserted ground that when Tyms met "Amber" to engage in sex in September 2007 he did not know that she was the same 13-year-old with whom he had the explicit sex-related chats a couple of months earlier and that he was consequently unaware that she was under age. That assertion was totally at odds with the detailed factual account set out in the plea agreement and, at least as importantly, was directly

contradicted by what Tyms had acknowledged in his own words[2] during the proceeding in which he had pleaded guilty (here is the exchange at Tr. 23:7 through Tr. 23:22 of that proceeding):

> THE COURT:  And I know that there has been a description here on pages two through the top of page four of your conduct.  But I want to get just in your own words, if you would--you don't have to give all of the details at all, but enough so that I can understand that you in fact are acknowledging commission of the offense.  So why don't you tell me in your own words what you did during this time frame beginning about June 23rd of 2007 and finishing up about September 25th, and where you did that?
>
> DEFENDANT TYMS:  Basically that I had communicated with the victim through cell phone and through chatting.  That we exchanged pictures in September, and that we had met at the end of September and had sex.
>
> THE COURT:  And it is accurate that you knew that Victim A was not yet 18 years old?
>
> DEFENDANT TYMS:  Yes, sir.

Indeed, Tyms' then-newly-minted revisionist history version was also flatly contradicted by his own words immediately after he was caught with Amber by the Carol Stream police--here is the relevant section of the Carol Stream police report ("Victim A" is Amber):

> In June, Marcus met a girl named [Victim A] on "Cool Talk" over the internet via their cell phones.  Marcus and [Victim A] exchanged cell phone numbers.

---

[2] Because of the fact that plea agreements are typically drafted by counsel rather than by a defendant himself or herself, this Court's uniform practice during plea colloquies is not to rely solely on the statements of fact set out in written plea agreements but rather to ask defendants to describe their criminal conduct in their own words.

5

> [Victim A]'s account on Cool Talk soon expired so
> Marcus contacted {Victim A] for a few months to talk on
> the phone.  Tonight, Marcus called [Victim A] to
> arrange for them to meet for the first time. ....
>
> Marcus met [Victim A] in June over an internet chat
> room called 'cool talk,' using his cell phone.  Marcus
> began to build a verbal intimate relationship with
> [Victim A].  Marcus asked [Victim A] to give him her
> cell phone number and [Victim A] did so.  Marcus called
> [Victim A] and they began to talk on the phone more
> often.  Marcus and [Victim A] had not yet met in person
> at this time.  On 9/24/07 at approximately 1800 hours,
> Marcus called [Victim A] and wanted to meet up with
> her.  Marcus told me that this conversation was
> specifically about Marcus and [Victim A] meeting up to
> have sex.  Marcus told [Victim A] that he wanted to
> have sex with her.  [Victim A] told Marcus she is a
> virgin.  Marcus asked [Victim A] 'how do you want me to
> fuck you.'  [Victim A] replied 'hard.'

Under all of the circumstances, then, this Court flatly rejected Tyms' second inventive effort to change the uncontroverted--and admitted--facts.

What has been said to this point plainly calls for the rejection of Tyms' first putative ground for relief, and this Court does so.  As for Tyms' second claimed ground, that repeats still another post-guilty-plea effort by Tyms--this time via a pro se filing on May 11, 2009--in another attempt to avoid being sentenced.  That bizarre attempt is best understood by attaching copies of Tyms' filing and of this Court's May 15 rejection, and they constitute Exs. 1 and 2 to this memorandum opinion and order.

That then deals with both aspects of Tyms' Section 2255 motion.  But this Court is also constrained to remark that the

6

motion has illustrated--inadvertently, to be sure--the kernel of truth in Oscar Wilde's ironic aphorism, found in Act 1 of <u>Lady Windermere's Fan</u>:

> In this world there are only two tragedies. One is not getting what one wants, and the other is getting it.

What Tyms does not seem to realize is that in being sentenced to an aggregate 280-month custodial term, he escaped the potential for what could well have been a far more severe sentence--at that point his extraordinary level of hubris was manifested not only in the respects that have been referred to in this opinion but also in the cavalier attitude that he continued to exhibit, which was demonstrated in part by a total failure to express the slightest degree of remorse during his statement in allocution and in part by a general manifestation of disrespect.

During Tyms' sentencing hearing this Court resisted the government's efforts to attach a far higher offense level (and a correspondingly higher Sentencing Guideline range) to Tyms' conduct. It also resisted the imposition of what would have been an entirely permissible heavier custodial sentence based on the reasons stated in the preceding paragraph. But if Tyms' current motion were to prove successful, which would put him back to square one to face the prospect of a new trial, he must recognize that the evidence to be produced at trial or in the ensuing

7

sentencing proceeding if he were to be convicted[3] could well generate a heavier (and perhaps substantially heavier) sentence than the one he is now serving (see the extended discussion in <u>United States v. Warda</u>, 285 F.3d 573, 579-81 (7th Cir. 2002)). That prospect however is for Tyms, not for this Court, to contemplate.

To return to the decision at hand, as indicated at the outset, Tyms' current effort squarely calls into play this aspect of Section 2255 Rule 4(b):

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

This Court so orders--both Tyms' Motion and this action are dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 28, 2009

---

[3] Just by way of example, Tyms' argument that he was unaware in September 2007 that Amber was the same young girl with whom he had exchanged the disgustingly appalling chat messages a couple of months earlier was based on his contention that he was engaged in the same activity with a number of other under-age girls during the same time frame.

Case 1:08-cr-00543  Document 62  Filed 05/11/2009  Page 1 of 3

May 6 2009

FILED
MAY 11 2009
May 11, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES
VS.
MARCUS TYMS

JUDGE MILTON I. SHADUR

RE: MOTION TO PROVE APPLICABLE JURISDICTION IN CAUSE NO. 08-CR-543-1.

DEFENDANT, MARCUS M. TYMS ("I, ME, MY"), BELIEVES I AM NOT SUBJECT TO THE TERRITORIAL-LIMITED "EXCLUSIVE LEGISLATION" AND ITS FOREIGN JURISDICTION MANDATED FOR WASHINGTON, DISTRICT OF COLUMBIA AND MILITARY PROPERTIES CEDED TO THE UNITED STATES "BY THE LEGISLATURE OF THE STATE IN WHICH THE SAME SHALL BE" [ART. 1:8:17 U.S. CONSTITUTION].

I LAWFULLY SQUARELY CHALLENGE THE FRAUDULENT JURISDICTION/AUTHORITY THAT DOES NOT APPLY TO ME, MAIN V. THIBOUTOT [100 S. CT. 2502 (1980)], HAGAN V. LAVINE [45 U.S. 528, 533], AND "JURISDICTION CAN BE CHALLENGED AT ANY TIME," BASSO V. UTAH POWER & LIGHT CO. [495 F. 2d 906, 910], AND "WHERE THERE IS ABSENCE OF JURISDICTION, ALL ADMINISTRATIVE AND JUDICIAL PROCEEDINGS ARE A NULLITY AND CONFER NO RIGHT, OFFER NO JUSTIFICATION," THOMPSON V. TOLME [7 L. Ed 381 (1829)], GRIFFETH V. FRAZIER [3 L. Ed 471, 12 U.S. 9 (1814)], TITLE 5 U.S.C. §558(b), ALSO "ALL LAWS WHICH ARE REPUGNANT TO THE CONSTITUTION ARE NULL AND VOID," MARBURY V. MADISON [5 U.S. 137 (1803)].

IT IS THEREFORE, INCUMBENT UPON ANY FORM OF GOVERNMENT - AND/OR ANY OF ITS AGENTS - TO EXPLAIN, SHOW, AND PROVE ANY CLAIMS OF JURISDICTION OVER THE PEOPLE, MY SELF, AND THE GEOGRAPHIC LOCATION(S) IN QUESTION [TITLE 5 U.S.C. § 556(d)].

IT APPEARS IN LAW THAT I AM AS FOREIGN AS A NON-RESIDENT ALIEN TO THE DISTRICT OF COLUMBIA'S FEDERAL GOVERNMENT, AS LIKEWISE TO RUSSIA.

EACH OF THE FIFTY (50) AMERICAN COUNTRIES (STATES) HAS ITS OWN CONSTITUTION WHICH IS NOT SUPERCEDED BY THE UNITED STATES CONSTITUTION.

MY RIGHTS, HAVING BEEN ENDOWED BY THE CREATOR OF THE UNIVERSE, AND DECLARED AS UNALIENABLE IN THE ORGANIC DOCUMENTS KNOWN AS THE CONSTITUTIONS AND THE DECLARATION OF INDEPENDENCE, CAN NOT BE ALIENATED FROM ME BY MY SELF OR ANY FORM OF GOVERNMENT, WITHOUT SERIOUS CONSEQUENCES.

PERSONS VIOLATING JURISDICTION SHALL BE CHARGED UNDER 'YOUR' TITLE 18 UNITED STATES CRIMINAL CODE [TITLE 18 U.S.C. §§ 242, 241, 872, 1001, 1621, 1622] AND ALL APPLICABLE LAW, FOR THEIR HIGH UNDERSTANDING AND SUPERIOR KNOWLEDGE OF THE LAW AND PERJURY OF OATHS.

I ASK THE COURT TO REQUIRE THE A.U.S.A. SHOW AND PROVE TO THIS COURT - AND TO DEFENDANT - HIS/HER AUTHORITY AND JURISDICTION TO ENFORCE THE CODES OF A FOREIGN GOVERNMENT, WITHIN THE SOVEREIGN TERRITORY OF ILLINOIS.

I ALSO ASK THIS COURT TO SHOW AUTHENTIC PROOF — FROM THE LEGISLATURE OF ILLINOIS — CEDING AUTHORITY AND JURISDICTION AND POWER TO ENFORCE THE CODES OF A FOREIGN GOVERNMENT WITHIN THE SOVEREIGN TERRITORY OF ILLINOIS.

TITLE 18 § 3231 OF THE UNITED STATES CODES DOES <u>NOT</u> GRANT UNIVERSAL JURISDICTION TO THE UNITED STATES.

IN THE ABSENCE OF AUTHENTIC PROOF FROM THE LEGISLATURE OF ILLINOIS, DEFENDANT MOVES THAT ALL CHARGES BE IMMEDIATELY DISMISSED — WITH PREJUDICE — AND I AM IMMEDIATELY RELEASED FROM UNITED STATES (FEDERAL) CUSTODY.

THIS IS <u>LAWFUL JUDICIAL NOTICE</u>, NUNC PRO TUNC, REMAINING IN EFFECT IN CAUSE NO. 08-CR-543-1.

———— NOTHING FOLLOWS ————

I DECLARE, UNDER PENALTY OF PERJURY, THAT THE FOREGOING IS TRUE, CORRECT, AND NOT MISLEADING.

_____
MARCUS M. TYMS, DEFENDANT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
v. ) No. 08 CR 543-1
)
MARCUS TYMS, )
)
        Defendant. )

MEMORANDUM ORDER

Marcus Tyms ("Tyms"), who has pleaded guilty to Count One of a three-count indictment charging him with sexual offenses with a female minor, has since thrashed about in an effort to delay--or to avoid entirely--the day of reckoning. To date those efforts have comprised (1) an unsuccessful motion to withdraw his guilty plea filed by his original counsel, (2) his firing of that counsel and (3) a second motion to withdraw the guilty plea, submitted on his behalf by John Beal, Esq., the member of this District's Federal Defender Panel that this Court has appointed to represent him. Now Tyms, though still represented by attorney Beal, has filed a self-prepared handwritten document captioned "Motion To Prove Applicable Jurisdiction in Cause No. 08-CR-543-1."

That filing is improper in its own right, because no criminal defendant represented by counsel is authorized to proceed pro se as well. But beyond that, Tyms' submission is a truly bizarre document that attacks the United States government

Ex. 2

as "a foreign government" that has no power to enforce its law "within the sovereign territory of Illinois." Although the entire three-page document must be read for full appreciation of its outre nature, it concludes in this fashion (copied verbatim):

> In the absence of authentic proof from the legislature of Illinois, defendent moves that all charges be immediately dismissed - with prejudice - and I am immediately released from United States (federal) custody.
>
> This is lawful judicial notice, nunc pro tunc, remaining in effect in Cause No. 08-CR-543-1.

This Court could well simply strike Tyms' motion as unauthorized. But because it is so flawed in substantive as well as procedural terms, the motion is denied out of hand. Moreover, Tyms would do well to confer with his appointed counsel as to the prospect that the course of conduct that he has undertaken can cause him to lose the benefit of the two-level offense reduction for "acceptance of responsibility" in this Court's calculation of the advisory Sentencing Guideline range. In any event, this Court plans to proceed with Tyms' presently scheduled June 8, 2009 sentencing (a date that has been reset after six deferrals).

*[signature]*
———————————————
Milton I. Shadur
Senior United States District Judge

Date: May 15, 2009